[Cite as *C.B. v. B.B.*, 2025-Ohio-2219.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| C.B., | : | |
| Plaintiff-Appellee, | : | No. 114172 |
| v. | : | |
| B.B., | : | |
| Defendant-Appellant. | : | |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** June 26, 2025

Civil Appeal from the Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. DR-19-377108

### *Appearances:*

Kvale Antonelli & Raj and Manav H. Raj, *for appellee.*

Mishak Law, LLC and Matthew A. Mishak, *for appellant.*

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Appellant-husband B.B. appeals the domestic relations court's judgment entry denying his motion to terminate spousal support. For the reasons that follow, we reverse and remand for an evidentiary hearing.

## I.  Procedural History and Background

{¶ 2}   B.B. and appellee-wife C.B. were married in 2005.  On June 11, 2019, the parties filed a petition for dissolution of marriage, with an attached signed separation agreement, dated May 7, 2019.  The agreement included a provision regarding spousal support.  Under Article V, Spousal Support, the agreement provided, in relevant part:

> Said obligation shall commence **June 1, 2019**, and shall terminate at the first of the following contingencies:  (a) the expiration of **seventy-two (72)** months or, (b) the death of Wife.

> Said spousal support provision shall be **non-modifiable** and the Court shall not retain jurisdiction over the issue of spousal support, except as otherwise specifically provided for herein.

(Emphasis sic.)

{¶ 3}   The separation agreement again addressed spousal support under the incorporated shared parenting plan.  Under Article VI, Child Support, Section A, the parties stipulated that the "attached" worksheet prescribed that B.B.'s child-support obligation would be $6,673 per month, plus a processing charge.[1]

> However, due to the spousal support agreement, [B.B.'s] child support obligation shall be . . . $3,000 per month, plus processing charge for the duration of his spousal support obligation to [C.B.]. [S]ubsequently, [B.B.'s] child support obligation shall be modified to the child support calculation in effect at the time of said modification.

The agreement also provided for child support termination based on the children's legal status or high school graduation, but not beyond the age of 19.

---

[1] No worksheet was attached to the separation agreement.

{¶ 4} The separation agreement also permitted the parties to modify the agreement. Section 8.14 provided, "This agreement may be amended or modified only by a written instrument signed by both parties."

{¶ 5} Following a hearing on July 18, 2019, where both parties were represented by individual counsel, the domestic relations court ordered the parties' marriage dissolved and entered a judgment entry of dissolution ("dissolution decree" or "decree").[2] The decree noted that the parties entered into a separation agreement, which was "attached hereto as Exhibit A and incorporated herein as if fully rewritten." The decree further affirmed that the parties "were still in agreement as to the terms" and found "that the Separation Agreement is fair, just, and equitable." The decree was signed by the judge, both parties, and their respective counsel.

{¶ 6} Regarding spousal support, the dissolution decree provided that in consideration of the relevant statutory factors, it was "appropriate and reasonable for spousal support to be paid by [B.B.] to [C.B.]." The decree set forth the undisputed amount and provided, in relevant part:

> Said support obligation shall commence on June 1, 2019 and continues for Seventy-One [sic] (72) months, subject to earlier termination in the event of the death *of either party, or the remarriage or cohabitation of Wife.*

---

[2] If a hearing occurred on July 18, 2019, no transcript has been provided to this court.

> Said spousal support provision shall be non-modifiable and the Court shall not retain jurisdiction over the issue of spousal support, except as otherwise specifically provided for herein.
>
> As additional support, Husband shall either maintain Wife on his employer's health insurance plan, or shall provide her similar health insurance coverage on a monthly basis for a period of one hundred twenty (120) months. Said insurance coverage premiums shall not exceed the sum of . . . $700 per month.

(Emphasis added.) This provision included additional events, beyond what the separation agreement permitted, that would terminate B.B.'s spousal support obligation — the death of B.B. and the remarriage or cohabitation of C.B. A hand-written interlineation in bluish ink above the crossed-out words "one hundred twenty (120) months" in the last paragraph of the decree reduced the time period for health insurance coverage to "seventy-two (72)" months. No other interlineations were made to this provision.

{¶ 7} The domestic relations court then "ordered, adjudged, and decreed" that B.B. pay C.B. spousal support, reiterating its prior findings:

> Said support obligation shall commence on June 1, 2019 and continues for Seventy-two (72) months, subject to earlier termination in the event of the death of *either party, or the remarriage or cohabitation of Wife.*
>
> Said spousal support provision shall be non-modifiable and the Court shall not retain jurisdiction over the issue of spousal support, except as otherwise specifically provided for herein.
>
> As additional support, Husband shall either maintain Wife on his employer's health insurance plan, or shall provide her similar health insurance coverage on a monthly basis for a period of seventy-two (72) months. Said insurance coverage premiums shall not exceed the sum of . . . $700 per month.

(Emphasis added.)

{¶ 8} Regarding child support, the dissolution decree noted that B.B. would pay C.B. child support, but it did not reference any spousal support considerations. The decree provided: "Pursuant to the child support worksheet guidelines, [B.B.'s] support obligation should be $3,000 per month." The worksheet was attached as Exhibit C.[3] The domestic relations court then "ordered, adjudged, and decreed" B.B.'s "child support and/or cash medical support obligation," in relevant part: "$3,000 per month ($1,500 per month per child) as child support." A hand-written interlineation in bluish ink followed, stating: "plus $64.78 per month ($32.39 per child) as cash medical for a total of $3,064.78." The remainder of the order regarding private health insurance is crossed out.

{¶ 9} The next section of the dissolution decree addressed "Duration/Termination of Child/Cash Medical Support":

> The duty of support shall continue until further order of Court or until the above-named children reach age 18 or so long as the children continuously attend, on a full-time basis, any recognized and accredited high school, however, no later than age 19, or as otherwise provided in [R.C.] 3119.86.

Finally, the decree summarized the "Monthly Payment of Support":

> [B.B.] shall pay $14,500 per month plus 2% processing charge, because Private Health Insurance is ordered to be provided at this time. This amount includes all applicable child support, cash medical support, spousal support, and payment toward arrearage.

---

[3] The worksheet referenced was dated July 18, 2019 — the day the parties executed the dissolution decree.

The decree did not address any subsequent child-support modification following the completion or termination of spousal-support payments.

{¶ 10} Neither party appealed from the final judgment, nor sought correction or relief from the judgment pursuant to Civ.R. 60.

{¶ 11} Instead, in 2023, B.B. moved to terminate his spousal support obligation contending that C.B. was cohabitating and engaged to marry. In support, he cited to the parties' dissolution decree that included the condition that spousal support would terminate in the event of "the remarriage or cohabitation of Wife." In support, B.B. attached the dissolution decree, the incorporated separation agreement, shared parenting plan, and child support worksheet, and his affidavit, averring that C.B. had been cohabitating with her now-fiancé since 2022.

{¶ 12} C.B. opposed the motion, contending that the parties' separation agreement did not include these additional terms, and under relevant case law, when ambiguity or inconsistency exists between the dissolution decree and the separation agreement, the language in the separation agreement controls. She contended that the inclusion of these additional terms was the result of "boilerplate language commonly included in these types of entries and the result of inadvertence or clerical error." C.B. requested that B.B.'s motion be denied and for the domestic relations court, pursuant to Civ.R. 60(A), issue a nunc pro tunc order correcting the clerical error contained in the dissolution decree to comport with the terms of the separation agreement regarding termination of spousal support.

{¶ 13} In response, B.B. did not dispute the domestic relations court's inclusion of the additional terms in the dissolution decree, contending "the court . . . added a minor provision not explicitly stated in the separation agreement." He asserted: "The circumstances surrounding the spousal support provision in this matter demonstrate deliberate and informed action by both parties." In support, he referenced that (1) the caption of dissolution decree notably highlighted "WITH SPOUSAL SUPPORT," (2) that the inclusion of "remarriage or cohabitation of Wife" was repeated twice in the decree and surrounded by hand-written interlineations, and (3) that Section 8.14 of the separation agreement allowed for modifications by written agreement signed by both parties, which the dissolution decree satisfied. According to B.B., these factors indicate "a thorough review and mutual agreement on these specific terms . . . [and] *could be viewed* as a mutually agreed upon modification." (Emphasis added.)

{¶ 14} In further support, B.B. cited case law suggesting that once a separation agreement is adopted and incorporated into a judgment decree, the decree becomes the enforceable document. He contended that the cases cited by C.B. were distinguishable because those cases involved judgment decrees adding additional financial obligations or expenses not provided for in the separation agreement. B.B. asserted that the terms in their decree were not in direct conflict but rather supplemented each other. He maintained, however, that requiring him to continue paying spousal support even after C.B. remarries or cohabitates created a *new* financial burden for him that was not specified in the dissolution decree.

Notably, B.B. did not advance any argument against C.B.'s request for the domestic relations court to grant her Civ.R. 60 request for a nunc pro tunc entry, reflecting the actual events terminating the payment of spousal support.

{¶ 15} Neither party presented any documentary evidence supporting their respective positions, demonstrating that the inclusion of the additional terms was either intentional by the parties or merely an inadvertent error by the domestic relations court.

{¶ 16} The domestic relations court denied B.B.'s motion in a written decision, concluding that the inconsistent and additional terms in the dissolution decree were "inoperative."[4] The court relied on and quoted this court's unpublished decision of *Cox v. Cox*, 1980 Ohio App. LEXIS 12100, *6-7 (8th Dist. June 26, 1980), which concluded that

> [w]here a court approves the separation agreement of the parties, and incorporates the agreement into its decree, the provisions of that portion of the entry which is the approved and incorporated agreement between the parties will control and the inconsistent express provision of the entry is inoperative in the absence of language in the entry reflecting the same subject matter, and expressly ordering the obligated party to comply with both.

{¶ 17} The domestic relations court made no factual findings except that the separation agreement only provided for two grounds for termination of spousal

---

[4] We note that the same domestic relations judge that presided over the parties' final dissolution hearing also considered and ruled on this motion. We further note that the record does not indicate that the domestic relations court conducted a hearing on this matter. If it did, B.B. has not presented this court with a transcript of that hearing.

support — (1) the expiration of seventy-two (72) months; or (2) C.B.'s death. The court noted that although the decree included additional grounds — the death of B.B. and C.B.'s cohabitation or remarriage — the dissolution decree did not contain any language indicating that the court was aware of these inconsistencies or provide any rationale for the additional grounds, which would allow the decree to supersede the separation agreement. In short, the domestic relations court could not or did not explain how or why these additional terms were included in the decree.

## II. The Appeal[5]

{¶ 18} B.B. now appeals, asserting the following single assignment of error:

The domestic [relations] court erred in failing to distinguish *Cox v. Cox* and therefore erred in enforcing the spousal support terms of the Separation Agreement and not the terms contained within the Judgment Entry of Dissolution.

{¶ 19} The issue before this court is straightforward: when a term in an approved and incorporated separation agreement is inconsistent with a term in a jointly executed judgment entry of dissolution, which document controls? However, the resolution of the issue is not as straightforward because it depends on the language used by the parties in the documents and the intent of the parties at the time of executing both documents.

### A. Standard of Review and Contract Interpretation

{¶ 20} Once the trial court grants a decree of dissolution that incorporates the separation agreement, the separation agreement is a binding contract between

---

[5] The parties did not request oral argument before this court.

two parties.  *Morris v. Morris*, 2016-Ohio-5002, ¶ 18, quoting *In re Adams*, 45 Ohio St.3d 219, 220 (1989).  Because the interpretation of a written contract is a question of law, an appellate court reviews de novo a trial court's interpretation of the parties' separation agreement as incorporated into the dissolution decree.  *Kmet v. Kmet*, 2019-Ohio-2443, ¶ 13 (8th Dist.), citing *Graham v. Drydock Coal Co*., 1996-Ohio-393, ¶ 10.  In interpreting a judgment decree that incorporates the parties' separation agreement, the normal rules of contract interpretation generally apply to ascertain the meaning of any ambiguous language.  *Kmet* at *id*., citing *Keeley v. Keeley*, 1997 Ohio App. LEXIS 3139 (12th Dist. July 21, 1997), citing *Scott v. Scott*, 1994 Ohio App. LEXIS 1776 (6th Dist. Apr. 29, 1994).

{¶ 21} When construing contract language, the principal goal is to effectuate the parties' intent.  *Skivolocki v. E. Ohio Gas Co*., 38 Ohio St.2d 244 (1974), syllabus.  A court will presume that the parties' intent resides in the language employed in the written document.  *Kelly v. Med. Life Ins. Co*., 31 Ohio St.3d 130 (1987), paragraph one of syllabus.  Thus, a court will give common words appearing in a written instrument their ordinary meaning, unless manifest absurdity results or unless some other meaning is clearly evidenced from the instrument.  *Alexander v. Buckeye Pipe Line Co*., 53 Ohio St.2d 241 (1978), paragraph two of syllabus.

{¶ 22} As relied on by the domestic relations court, this court has previously stated that in the absence of the domestic relations court's recognition of inconsistent terms in a judgment decree and separation agreement, and ordering compliance with both, an approved and incorporated separation agreement's terms

will control over the decree of dissolution. *Cox*, 1980 Ohio App. LEXIS 12100, at *6-7 (8th Dist.), citing *Hawthorne v. Hawthorne*, 24 Ohio App.2d 141, 146 (5th Dist. 1970).

{¶ 23} B.B. recognizes this court's prior decision but contends that (1) *Cox* is factually distinguishable and thus inapplicable, and (2) Ohio Supreme Court case law and case law from this district suggests that "when a separation agreement is incorporated into a judgment order, it is the judgment decree that becomes the enforceable document." *See* Appellant's Brief, page 7. In support, he cites to *Holloway v. Holloway*, 130 Ohio St. 214 (1935), *Harris v. Harris*, 58 Ohio St.2d 303 (1979), and *Hogan v. Hogan*, 29 Ohio App.2d 69 (8th Dist. 1972).

## B. Is *Cox* Distinguishable or Applicable?

{¶ 24} B.B. first contends that the domestic relations court erred in relying on *Cox* because it is factually distinguishable. This court in *Cox* relied on *Hawthorne*, therefore, *Hawthorne* must be addressed first.

### 1. *Hawthorne* Creates a Principle Rule

{¶ 25} In *Hawthorne*, 24 Ohio App.2d 141 (5th Dist.), the court considered a judgment of divorce that approved and incorporated a jointly negotiated separation agreement that set forth certain terms regarding child support, including a decreasing monthly amount ($300) as the children matured and with the payment of education and medical expenses. In the court's final decree, that was prepared by wife's counsel but not submitted to husband's counsel for approval, it ordered husband to pay wife $75 in child support per week.

{¶ 26} Three years later, wife filed a motion seeking a lump-sum judgment on arrearages owed under the divorce decree. At the hearing, husband offered evidence of child support payments in accordance with the terms of the parties' separation agreement, i.e., the $300 payment, including documentation of their children's earnings, living situations, and schooling, which were qualifying situations warranting a decrease in monthly support amounts. The trial court refused to consider any of this evidence or "allow any credit upon the [$75] per week order" against the amounts husband paid to wife pursuant to the separation agreement. The court entered judgment in favor of wife for arrearages owed. Husband appealed.

{¶ 27} The Fifth District, without citing to any statute, rule, or case authority throughout its entire decision, "set forth what [it] believe[d] to be the controlling rule which operates to decide this case."

> Where an express provision for support for minor children in a divorce judgment entry is inconsistent with a provision of a separation agreement which is expressly both approved and incorporated by reference into the same entry, the provisions of that portion of the entry which is the approved and incorporated agreement between the parties will control and the inconsistent express provision of the entry is inoperative in the absence of the language in the entry effectively demonstrating that the court was aware of the two inconsistent provisions respecting the same subject matter and expressly ordering the obligated party to comply with both.

> The reason for this is that where the court actually approves the agreement, the court's approval extends to the limitation upon the liability for support.

> A court cannot in logic be said to be intending to approve a maximum amount and also by the same document to be ordering an additional

amount exceeding in its separate self the whole of the first amount separately ordered.

*Id.* at 146. The court further stated:

We recognize that the court may disapprove the agreement or may approve it subject to the exception of an additional order. However, the court did neither. The court *simply signed* an order with two *separate inconsistent* provisions respecting the same subject under circumstances which indicate it was done by *inadvertence*."

(Emphasis added.) *Id.* at 146-147. Accordingly, the *Hawthorne* Court reversed the trial court's decision, finding its conflicting $75 support provision in the final divorce entry "inoperative." *Id.* at 147.

### 2. *Cox* Expands the *Hawthorne* Rule

{¶ 28} In *Cox*, 1980 Ohio App. LEXIS 12100 (8th Dist.), the parties filed a petition for dissolution with an attached separation agreement that was incorporated in the petition by reference. The separation agreement specified that husband would pay wife $500 in support until she was able to provide for herself. *Id.* at *2. One month later, the parties executed an addendum to the separation agreement specifying that husband would pay wife $300 in support until her death or remarriage. The trial court granted the parties a dissolution, incorporating the separation agreement and addendum by reference, and finding that the parties were still in agreement as to their terms. The trial court's dissolution decree originally ordered husband to pay wife $500 in support until she was able to provide for herself, but the $500 was subsequently crossed out and replaced with $300 as provided in the addendum; the event effectuating termination was left untouched.

{¶ 29} Two years later, husband moved to modify the dissolution decree, contending that because wife was now employed, she was able to provide for herself and thus, the support order should be terminated. A referee conducted a hearing on the motion, agreeing with husband. The trial court, however, overruled the referee, finding in favor of wife and clarifying the culmination of events that led to the inconsistency between the dissolution decree and the separation agreement, including the addendum. The trial court found that when the drafted decree was modified by interlineation to reflect the addendum, the $500 payment was changed to $300, but by oversight the interlineation failed to reflect the event regarding termination. The court found that under the terms of the separation agreement and addendum, husband was obligated to make support payments to wife in the amount of $300 until wife's death or remarriage.

{¶ 30} Husband appealed to this court, contending that the wording in the dissolution decree that incorporated the separation agreement and addendum should control over the terms of the addendum to the separation agreement. According to husband, because the decree was inconsistent with the separation agreement and the trial court found the terms in the decree to be "fair, just, and equitable," the plain wording of the decree superseded the terms of the agreement including the addendum. This court disagreed.

{¶ 31} Relying and expanding on the *Hawthorne* "rule," this court held that

> [w]here a court approves the separation agreement of the parties, and incorporates the agreement into its decree, the provisions of that portion of the entry which is the approved and incorporated agreement

between the parties will control and the inconsistent express provision of the entry is inoperative in the absence of language in the entry reflecting the same subject matter, and expressly ordering the obligated party to comply with both. This principle is especially applicable to a decree for dissolution of marriage which must include a separation agreement. The nature of the dissolution proceeding is voluntary and cooperative. The proceeding has been initiated by both parties and the terms of the decree, by the very nature of a dissolution, are those which have been agreed to by the parties, rather than those which have been imposed by the court.

(Cleaned up.) *Cox,* 1980 Ohio App. LEXIS 12100, at *6-7 (8th Dist.), citing *Hawthorne*, 24 Ohio App.2d 141 (5th Dist.).

{¶ 32} This court further noted that "if a court could, through a dissolution decree, alter a separation agreement which had been entered into by [the parties], the policy behind dissolution would be nullified and the *intent of the parties* would be violated." (Emphasis added.) *Id*. at *7.

{¶ 33} In affirming the trial court, this court relied on the policy reasons above and the parties' intent, but also on the trial court's *admission* that it had *inadvertently* placed the terms of the separation agreement into the dissolution decree rather than those in the addendum. This court noted that once this oversight was brought to the attention of the trial court, the court could have corrected the mistake on its own initiative pursuant to Civ.R. 60(A). *Id*. at *8. Finding that the provisions in the addendum to the separation agreement controlled over the provision in the dissolution decree, this court stated that "[t]his constitutes the *intention* of the parties as evidenced by the signed addendum to the separation agreement." (Emphasis added.) *Id*. at *9.

### 3. *Hawthorne* is Applied by the Sixth District in *Dayringer*

{¶ 34} The Sixth District subsequently applied *Hawthorne*, but not *Cox*, in its unreported decision in *Dayringer v. Dayringer*, 1982 Ohio App. LEXIS 11771 (6th Dist. Mar. 26, 1982). In that case, the parties entered into a settlement agreement prior to the scheduled court hearing regarding all aspects of their divorce dispute, including property division, support, custody, and visitation. The settlement agreement terms were verbalized on the record in open court and then verbally approved by the court, the parties, and their respective counsel.

{¶ 35} Husband's counsel prepared the judgment entry, but the language contained therein did not reflect the in-court and approved settlement, and thus wife's counsel submitted her own entry to the court. The trial court signed husband's entry and wife appealed, contending that the court erred in entering judgment that materially differed from the in-court settlement agreement. The Sixth District agreed.

{¶ 36} Relying on the law in effect at the time, the court stated that memorializing the settlement terms in writing was unnecessary to render the agreement enforceable because an in-court settlement agreement adopted and incorporated into the decree was enforceable absent a written agreement. And relying on *Hawthorne*, the Sixth District found the parties' divorce decree terms inoperative because they were inconsistent with an approved, incorporated settlement agreement. The court also supported its decision based on case law holding that an agreement between the parties that is incorporated into the decree

is not subject to modification absent mitigating circumstances. Accordingly, the *Dayringer* Court found it was error for the trial court to modify the settlement terms as agreed to in open court between the parties.

### 4. Does the *Hawthorne* Rule apply in this case?

{¶ 37} It is unclear whether *Hawthorne*, *Cox*, and *Dayringer* apply to the circumstances and issue before this court because there are distinguishing characteristics. Glaringly apparent from those decisions is that the parties all agreed to the terms and conditions of the settlement or separation agreements, or addendums thereto, and the inconsistency or modifications to the divorce or dissolution decrees were clearly made unilaterally or inadvertently by the trial court — facts that could be gleaned from those appellate decisions. *See Hawthorne*, 24 Ohio App.2d at 147 (5th Dist.) ("[T]he court simply signed an order with two separate inconsistent provisions respecting the same subject under circumstances which indicate that it was done by inadvertence[.]"); *Cox*, 1980 Ohio App. LEXIS 12100 at *8 (8th Dist.) (trial court admitted that it had inadvertently placed the terms of the separation agreement into the dissolution decree rather than those in the addendum); and *Dayringer*,1982 Ohio App. LEXIS 11771 at *2, 5 (6th Dist.) (trial court "added new material terms to the agreement . . . it was error for the trial court to modify the settlement agreement between the parties and read into the record").

{¶ 38} Accordingly, as these cases reveal, the unsupported rule in *Hawthorne* and its expansion in this court's unreported decision in *Cox* should not

be construed as a bright-line rule that the terms in a separation agreement automatically control when there is an inconsistency, ambiguity, or conflict between the terms of a separation agreement and a divorce or dissolution decree.[6]   In resolving this situation, as with any contract, the ambiguity or conflict must consider the intent of the parties at the time they executed the documents.

{¶ 39} In this case, we have not been presented with any facts or circumstances surrounding how or why the additional qualifying events for terminating spousal support were added to the dissolution decree.  The domestic relations court made no factual findings regarding the parties' intent, or whether it modified the separation agreement, either intentionally or inadvertently, by including these additional spousal support terminating events in the dissolution decree.  C.B. suggests that the domestic relations court merely included boilerplate language that inadvertently remained in the divorce decree.  B.B. suggests that the interlineations in the spousal support section of the decree suggests that the inclusion of additional qualifying events terminating support was either (1) agreed to by the parties, or (2) the domestic relations court modified this provision to

---

[6] Although *Cox* is a decision from this appellate district, it is an unpublished decision issued before May 2, 2002.  *See* Rep.Op.R. 3.4 ("All opinions of the courts of appeals issued after May 1, 2002 may be cited as legal authority and weighted as deemed appropriate by the courts without regard to whether the opinion was published or in what form it was published.").

include additional qualifying events terminating support.[7]   Accordingly, the *Hawthorne* rule that applied in *Cox* may very well apply in this case, but only to the extent that the intent of the parties permits its application.

### C.  Does the Decree Supersede the Separation Agreement?

{¶ 40} B.B. contends that the language and terms in the dissolution decree supersedes the language and terms in the separation agreement because the domestic relations court approved and incorporated the agreement into the decree. In support, he cites to *Holloway*, 130 Ohio St. 214, *Harris*, 58 Ohio St.2d 303, and *Hogan*, 29 Ohio App.2d 69 (8th Dist.), and relies on a single concept applied in those cases that a divorce or dissolution decree supersedes an incorporated separation agreement.  B.B.'s reliance is mistaken, however, because this legal concept involves processes of enforcing a separation agreement, not interpreting conflicting terms between the decree and agreement.[8]

{¶ 41} In each of these cases, the issue involved whether a party could be held in contempt for failing to fulfill their support or property settlement obligations under a separation agreement that was adopted and incorporated into a divorce or

---

[7] *But see* R.C. 3105.18(E)(2), prohibiting a court from modifying the terms of spousal support unless the separation agreement specifically grants the court authority to modify the amounts or terms.

[8] We note that at the time *Holloway, Harris*, and *Hogan* were decided, the law governing both divorce and dissolution proceedings was entirely different, and in fact, the law governing both has been revised and amended multiple times, limiting the authority of domestic relations courts in dissolution proceedings.  *See Morris*, 2016-Ohio-5002 (providing an overview about the evolution of divorce and dissolution jurisprudence in Ohio).

dissolution decree. In none of these cases did the issue involve inconsistent terms or provisions between the two documents, but rather contemplated the means in which a party could enforce the documents. In *Holloway*, the Ohio Supreme Court established that once a separation agreement is incorporated into the divorce decree, the separation is superseded by the decree and elevates the agreement beyond a "commercial transaction." *Holloway* at 216.

{¶ 42} The Ohio Supreme Court extended this principle in *Harris*, explaining that by incorporating the separation agreement into the decree, the agreement is no longer a contract but a court order that may be enforceable through contempt proceedings. *Harris* at 308.

{¶ 43} Finally, this court in *Hogan* applied both *Holloway* and *Harris* and stated, "[A]s soon as incorporated into the decree the Separation Agreement is superseded by the decree, and the obligations imposed are not those imposed by contract, but are those imposed by decree, and enforceable as such." *Hogan*, 29 Ohio App.2d at 71 (8th Dist.). Accordingly, this court held that incorporating a separation agreement into the divorce decree "does not reduce the decree to that of a mere contract, but raises the included language [of the separation agreement] to a greater status, giving it the force and effect it would have enjoyed had it been fully rewritten into the order or decree." *Id.*

{¶ 44} Accordingly, *Holloway*, *Harris*, and *Hogan* stand for the proposition that once a separation agreement is incorporated into the decree, it is elevated to the

status of a court order; the "contract" becomes a "court order" or "judgment" and thus can be properly enforced by way of contempt proceedings.

{¶ 45} Based on the foregoing, *Holloway*, *Harris*, and *Hogan* are clearly distinguishable to the issue before this court. B.B.'s reliance is misplaced, and the language in the dissolution decree does not automatically supersede the language in the separation agreement in this case.

## III. Conclusion

{¶ 46} Was the inclusion of the additional terms merely a clerical error much like that in *Cox*? Did the domestic relations court unilaterally modify the terms of the separation agreement, much like *Hawthorne* and *Dayringer*? Did the parties intend to modify the separation agreement as permitted by Article VII, Section 8.14 of the separation agreement by including these additional terms in the jointly executed dissolution decree?

{¶ 47} Based on the record before this court, we are unable to discern the intent of the parties when they jointly executed the dissolution decree. The separation agreement permits the parties to amend or modify their agreement if both sign a subsequent document, which the dissolution decree satisfies. Accordingly, we find that the domestic relations court should have conducted an evidentiary hearing to determine the intent of the parties when they jointly executed

the dissolution decree that arguably modified the parties' jointly executed separation agreement.[9]  The assignment of error is sustained.

{¶ 48} Judgment reversed and remanded for an evidentiary hearing.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, JUDGE

EMANUELLA D. GROVES, P.J., and
MICHAEL JOHN RYAN, J., CONCUR

---

[9] We note that the dissolution decree does not address or even reference the separation agreement's provision regarding modification of child support once spousal support terminates.  On remand, the domestic relations court should clarify the parties' understanding of this provision as well.